# EXHIBIT 44

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

APTIV TECHNOLOGIES LIMITED,

Plaintiff,

v.

MICROCHIP TECHNOLOGY INC.,

Defendant.

C.A. No. 23-307-JDW

**JURY TRIAL DEMANDED**

## DEFENDANT'S INITIAL INVALIDITY CONTENTIONS

Pursuant to the Scheduling Order (D.I. 34), Defendant Microchip Technology, Inc. ("Microchip") hereby respectfully serves its Initial Invalidity Contentions for United States Patent Nos. 9,460,037 ("'037 Patent"); 9,619,420 ("'420 Patent"); 9,645,962 ("'962 Patent"); 10,545,899 ("'899 Patent"); 11,176,072 ("'072 Patent"); and 11,681,643 ("'643 Patent") (collectively, the "Asserted Patents") and accompanying document production on Plaintiff Aptiv Technology Ltd. ("Aptiv"). Aptiv asserts that Microchip infringes claims 1-17 of the '037 Patent; claims 1-20 of the '420 Patent; claims 1-19 of the '962 Patent; claims 1-6 of the '899 Patent; claim 1 of the '072 Patent; and claims 1-15 of the '643 Patent (collectively, "Asserted Claims") under 35 U.S.C. § 271(a). (*See* Aptiv's Infringement Contentions, served September 8, 2023 ("Infringement Contentions") at 1.) Microchip contends that the Asserted Claims are invalid for anticipation and/or obviousness based on the prior art cited in these Initial Invalidity Contentions; for lack of written description and/or enablement under 35 U.S.C. § 112(a); and/or for indefiniteness under 35 U.S.C. § 112(b). Microchip expressly denies that any accused product, or any of Microchip's other products or services, infringes any of the Asserted Claims, and nothing in these Initial Invalidity Contentions should be interpreted as contradicting that express denial of infringement.

1

Microchip reserves the right to amend, supplement, and/or otherwise modify these Initial Invalidity Contentions. Microchip's Initial Invalidity Contentions are based on information reasonably known and available to Microchip at this time. Microchip has not yet completed its investigation of the facts and documents relating to this action and has not completed its preparation for trial. Because Microchip's investigation, prior art search, analysis, discovery, and trial preparation are still ongoing, Microchip may identify additional prior art or arguments that will add meaning to already known prior art or arguments, lead to additions or changes to these Initial Invalidity Contentions, and/or provide additional prior art and arguments. Microchip further reserves the right to rely on any facts, documents, or other evidence that are (i) subsequently discovered; (ii) subsequently determined to be relevant for any purpose; or (iii) subsequently determined to have been omitted from these Initial Invalidity Contentions or from a production of documents or things in discovery including third-party discovery. Microchip further reserves the right to rely on reports and/or testimony from experts, as well as from fact witnesses such as prior artists. Documents relating to expert testimony, if any, will be produced when expert discovery is exchanged in accordance with the Scheduling Order (D.I. 34).

Aptiv has not identified any way in which it disputes that the Asserted Claims are invalid based on the prior art identified by Microchip—including any way in which Aptiv disputes that these prior art references disclose each and every element of the Asserted Claims either by anticipation or through obviousness. To the extent that Aptiv disputes, for example, that a claim element is disclosed by a prior art reference, Microchip reserves the right to identify other aspects or disclosures of the prior art reference and any other prior art reference that would have made obvious the addition of the allegedly missing limitation(s) to the disclosed reference.

Aptiv's Infringement Contentions did not disclose any theories of infringement under the doctrine of equivalents. Microchip requested that Aptiv provide its doctrine of equivalents ("DOE") theories in advance of Microchip's Initial Invalidity Contention deadline, but Aptiv failed to do so. To the extent Aptiv is later permitted to assert any previously undisclosed DOE theories, Microchip reserves the right to provide and rely on invalidity contentions to address those DOE

2

theories.

The Court has not yet construed any terms or phrases of the Asserted Claims. The parties will exchange proposed claim terms for construction and proposed constructions for such terms after Microchip serves these Initial Invalidity Contentions. Microchip therefore has based its Initial Invalidity Contentions, at least in part, on the claim constructions or positions that Aptiv appears to have adopted (explicitly or implicitly) in its First Amended Complaint and in its Infringement Contentions, which include deficiencies and ambiguities that necessarily limit Microchip's ability to understand how Aptiv is interpreting the Asserted Claims. Nothing in these Initial Invalidity Contentions should be construed as an admission that Microchip agrees with any of Aptiv's explicit or implicit claim constructions. To be clear, Microchip expressly reserves the right to challenge the sufficiency of Aptiv's Infringement Contentions and the construction of any claims or claim terms, phrases, or clauses that Aptiv purports to have explicitly or implicitly construed, that Aptiv identifies, or that Aptiv may construe in the future. Prior art not included in this disclosure, whether or not now known to Microchip, may become relevant depending on the claim constructions ultimately adopted by the Court. To the extent that Aptiv proposes new constructions, purports to clarify its existing constructions, and/or otherwise identifies any constructions in its forthcoming proposed claim terms for construction, preliminary constructions, or throughout the claim construction process, Microchip reserves its right to amend, supplement, and/or otherwise modify these Initial Invalidity Contentions.

Further, Aptiv has not yet identified all of its factual or legal bases that demonstrate entitlement to the effective filing dates identified in Aptiv's Supplemental Responses to Defendant's First Set of Interrogatories, served September 13, 2023. Microchip assumes that the Asserted Patents are entitled to a September 26, 2013 priority date for the purposes of these Preliminary Invalidity Contentions, but reserves the right to challenge the priority for any of the Asserted Claims. For example, claims 11, 12, 13, 18, and 19 of the '962 Patent rely upon new material added on September 6, 2016, such as Figures 9 and 10, which describes the logic circuitry that negotiates power transfer as being a part of an implementation of "USB power delivery

3

capability as described in USB Power Delivery Specification Rev. 3.0 v1.0" from March 25, 2016 and power control conforming to the USB Type C standard Rev. 1.2 also published on March 25, 2016. ('962 Patent, col. 10:36-11:4.) As another example, claims 2, 8, 16, and 20 of the '420 Patent, claims 2 and 15 of the '962 Patent, and claims 2, 15, and 16 of the '037 Patent require multiple simultaneous connections between the upstream port and downstream ports. The supporting disclosure for these limitations does not appear in the provisional application and those claims are therefore not entitled to the benefit of the priority date of the provisional application. This impedes Microchip's ability to determine the full scope of references that may (or may not) qualify as "prior art." Microchip reserves the right to amend its Initial Invalidity Contentions to substitute or add alternative invalidating references. These disclosures are made without waiver of, or prejudice to, any objections that Microchip may have regarding the subject matter of these disclosures or any documents or individuals identified in Aptiv's Supplemental Responses to Defendant's First Set of Interrogatories, served September 13, 2023.

Microchip further reserves its right to amend, supplement, and/or otherwise modify these Initial Invalidity Contentions following Aptiv's reduction(s) of the number of asserted claims pursuant to any agreement reached by the parties or Court order.

## I.    IDENTIFICATION OF PRIOR ART

Microchip lists below the evidence of the knowledge of a person of ordinary skill in the art as well as prior art now known to Microchip that Microchip contends, anticipates, and/or renders obvious the Asserted Claims.

For prior art under 35 U.S.C. § 102(a)(1), the below identification and the references themselves, based on Microchip's current understanding and knowledge, disclose that the claimed invention was patented, described in a printed publication, in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention. For prior art under 35 U.S.C. § 102(a)(2), the below identification and references themselves, based on Microchip's current understanding and knowledge, disclose that the claimed invention was described in an issued patent or in a published application that names another inventor and was effectively filed

4

before the effective filing date of the claimed invention.

### A.    Exemplary Knowledge of a Person of Ordinary Skill in the Art

A person of ordinary skill in the art at the time of the alleged invention would have had at least a four-year degree in electrical engineering, computer engineering, computer science, or a related field and several years of experience designing USB systems, including USB hosts, USB hubs, and USB devices.  A relevant advanced degree may substitute for some work experience.  Similarly, relevant work experience may substitute for formal education.  A person of skill would therefore have had a working understanding of network/communication architectures (*e.g.*, master/slave) and components (*e.g.*, host-to-host bridges), computer hardware and peripherals, computer programming, and the design/implementation of communication software/firmware/drivers in standard operating systems (*e.g.*, Windows and Linux) and embedded systems.  In addition to the admitted prior art from the Asserted Patents and their file histories, the following exemplary documents provide evidence of the state of the art and knowledge of a person of ordinary skill in the art at the time of the alleged invention:

### 1.  Patents

| Patent No. | Publication Date | Short Cite | Bates # |
|---|---|---|---|
| U.S. Patent App. Pub. No. 2004/0088449 to Seiji Sakaki | 2004-05-06 | Sakaki | MCHP_00458499 |
| U.S. Patent App. Pub. No. 2005/0091437 to Hung-Chun Yang, Charles Tsai | 2005-04-28 | Yang | MCHP_00458511 |
| U.S. Patent App. Pub. No. 2005/0170699 to Eric Overtoom | 2005-08-04 | Overtoom III | MCHP_00458518 |
| U.S. Patent App. Pub. No. 2006/0106962 to Nancy Woodbridge, Enrique Rendon, Mark Fullerton | 2006-05-18 | Woodbridge | MCHP_00458530 |
| U.S. Patent App. Pub. No. | 2008-01-03 | Wurzburg | MCHP_00458557 |

| Patent No. | Publication Date | Short Cite | Bates # |
|---|---|---|---|
| 2008/0005262 to Henry Wurzburg, Mark R. Bohm, Mark Y. Fu | | | |
| U.S. Patent App. Pub. No. 2009/0063717 to Mark R. Bohm, Morgan H. Monks, Henry Wurzburg | 2009-03-05 | Bohm III | MCHP_00458618 |
| U.S. Patent App. Pub. No. 2009/0125658 to Turgut Aytur, Frederic Battaglia, Saurabh Garg, Batuhan Okur, Ping-Wen Ong, Venkatesh Rajendran | 2009-05-14 | Aytur | MCHP_00458627 |
| U.S. Patent App. Pub. No. 2009/0172214 to Steve McGowan | 2009-07-02 | McGowan | MCHP_00458651 |
| U.S. Patent App. Pub. No. 2009/0185559 to Evan Chen, Ching-Lung Cheng | 2009-07-23 | Chen II | MCHP_00458659 |
| U.S. Patent App. Pub. No. 2010/0228902 to Cheng-Sheng Chou, Hung-June Wu | 2010-09-09 | Chou | MCHP_00458689 |
| U.S. Patent App. Pub. No. 2011/0013624 to Jürgen Lerzer, Morten Christiansen, Marcus Mertens | 2011-01-20 | Lerzer | MCHP_00458699 |
| U.S. Patent App. Pub. No. 2012/0137041 to Johnny Hsiang-yu Chen | 2012-05-31 | Chen III | MCHP_00458717 |
| U.S. Patent App. Pub. No. 2012/0260013 to Chun Tse LIN | 2012-10-11 | Lin II | MCHP_00458731 |
| U.S. Patent App. Pub. No. 2012/0324120 to Min Soo Lee, Jin Ho Kim, Beom Jin Jeon | 2012-12-20 | Lee | MCHP_00458737 |
| U.S. Patent App. Pub. No. | 2015-03-26 | Foster | MCHP_00458866 |

6

| Patent No. | Publication Date | Short Cite | Bates # |
|---|---|---|---|
| 2015/0089098 to Peter Graham Foster | | | |
| U.S. Patent No. 8,533,380 to Ming-Te Chang | 2013-09-10 | Chang III | MCHP_00459442 |
| U.S. Patent No. 6,131,135 to Darren L. Abramson, Karthi R. Vadivelu | 2000-10-10 | Abramson | MCHP_00458899 |
| U.S. Patent No. 6,308,239 to Hideyuki Osakada, Ryuichi Hattori, Yukihiro Seki | 2001-10-23 | Osakada I | MCHP_00458906 |
| U.S. Patent No. 6,532,512 to Hiromitsu Torii, Hirokatsu Yui | 2003-03-11 | Torii | MCHP_00458933 |
| U.S. Patent No. 6,584,519 to William C. Russell | 2003-06-24 | Russell | MCHP_00458941 |
| U.S. Patent No. 6,600,739 to Keith M. Evans, Kevin P. Grundy, Craig B. Owens | 2003-07-29 | Evans | MCHP_00458952 |
| U.S. Patent No. 6,622,195 to Hideyuki Osakada, Ryuichi Hattori, Yukihiro Seki | 2003-09-16 | Osakada II | MCHP_00458958 |
| U.S. Patent No. 7,058,738 to Kenneth W. Stufflebeam, Jr. | 2006-06-06 | Stufflebeam | MCHP_00458999 |
| U.S. Patent No. 7,085,876 to Ching-Chung Lai, Hung-Pin Chen | 2006-08-01 | Lai | MCHP_00459035 |
| U.S. Patent No. 7,213,096 to John S. Keys, John S. Howard, Abdul R. Ismail | 2007-05-01 | Keys | MCHP_00459077 |
| U.S. Patent No. 7,214,089 to Tom Learmonth, Gary Kung | 2007-05-08 | Learmonth | MCHP_00459087 |
| U.S. Patent No. 7,293,118 to David Gordon Wright | 2007-11-06 | Wright I | MCHP_00459095 |
| U.S. Patent No. 7,340,554 to Chee Ee Lee, Constantin | 2008-03-04 | Lee 2 | MCHP_00459105 |

7

| Patent No. | Publication Date | Short Cite | Bates # |
|---|---|---|---|
| Socol, Jerome Tjia | | | |
| U.S. Patent No. 7,565,467 to Toshiyuki Nagase | 2009-07-21 | Nagase | MCHP_00459170 |
| U.S. Patent No. 7,657,691 to David Luke | 2010-02-02 | Luke | MCHP_00459187 |
| U.S. Patent No. 7,769,940 to Daniel Wiler | 2010-08-03 | Wiler | MCHP_00459211 |
| U.S. Patent No. 7,849,251 to Paul Diefenbaugh | 2010-12-07 | Diefenbaugh | MCHP_00459227 |
| U.S. Patent No. 7,896,386 to Osamu Fukawatase, Makoto Sekizuka, Kenji Imamura, Takuya Nezaki | 2011-03-01 | Fukawatase | MCHP_00459238 |
| U.S. Patent No. 8,484,403 to Hung-June Wu, Cheng-Sheng Chou | 2013-07-09 | Wu | MCHP_00459382 |
| U.S. Patent No. 8,578,060 to Eyran Lida, Aviv Salamon | 2013-11-05 | Lida 3 | MCHP_00459461 |
| U.S. Patent No. 8,589,141 to Fong LienYao-Lung Kuo | 2013-11-19 | Lien | MCHP_00459500 |
| U.S. Patent No. 8,645,584 to Aviv Salamon, Eyran Lida | 2014-02-04 | Salamon 1 | MCHP_00459512 |
| U.S. Patent No. 8,683,085 to Jim Castleberry, David Luke | 2014-03-25 | Castleberry | MCHP_00459551 |
| U.S. Patent No. 9,049,041 to Eyran Lida, Aviv Salamon | 2015-06-02 | Lida 1 | MCHP_00459600 |
| U.S. Patent No. 9,059,864 to Aviv Salamon, Eyran Lida | 2015-06-16 | Salamon 2 | MCHP_00459639 |
| U.S. Patent No. 9,059,865 to Aviv Salamon, Eyran Lida | 2015-06-16 | Salamon 3 | MCHP_00459678 |
| U.S. Patent No. 9,104,821 to Robert A. Dunstan, Gary A. Solomon, Joseph A. Schaefer | 2015-08-11 | Dunstan | MCHP_00459717 |

8

| Patent No. | Publication Date | Short Cite | Bates # |
|---|---|---|---|
| U.S. Patent No. 9,201,826 to Xiaolong Huang, Xiaodong Wang, Vijayalakshmi R. Raveendran | 2015-12-01 | Huang | MCHP_00459730 |
| U.S. Patent No. 9,230,896 to Chien Chen Lee, Li Chiun Hung | 2016-01-05 | Lee | MCHP_00459756 |
| U.S. Patent No. 9,325,521 to Pei Chung Liu | 2016-04-26 | Liu | MCHP_00459795 |
| U.S. Patent No. 9,342,131 to Shinya Saito | 2016-05-17 | Saito | MCHP_00459808 |
| U.S. Patent No. 9,684,805 to Sofin Raskin, Michael Wang, Joshua Porten, Alexander INDENBAUM, Shaoan Chin | 2017-06-20 | Raskin | MCHP_00459832 |
| U.S. Patent No. 9,864,711 to Jennifer C. Wang, Alejandro Lenero Beracoechea, Nai-chih Chang, Steven B. McGowan | 2018-01-09 | Wang | MCHP_00459846 |
| Chinese Patent No. CN100507888C to 张琦栋, 蓝世旻, 林毅杰 | 2008-06-25 | Zhang | MCHP_00457006; MCHP_00457013 |
| Chinese Patent No. CN101017470A to 陈柏菁, 李允国 | 2007-08-15 | Chen Baijing | MCHP_00457024; MCHP_00457037 |
| Chinese Patent No. CN103326210 to 陈佳裕 | 2013-09-25 | Chen IV | MCHP_00457058; MCHP_00457072; MCHP_00457079 |

| Patent No. | Publication Date | Short Cite | Bates # |
|---|---|---|---|
| German Patent No. DE102004014456 to Rainer Dr. Göttfert, Stefan Dr. Rüping, Berndt M. Dr. Gammel and Kalman Dr. Cinkler | 2005-10-27 | Gottfert | MCHP_00457124; MCHP_00457128 |
| Japanese App. Publication No. 2006/185359 to Shinichi Yoshida信一 吉田; Manabu Kiri学 喜利; Hiroshi Masuda 浩 増田; Takashi Hirabayashi俊 平林 | 2006-07-13 | Yoshida | MCHP_00457546; MCHP_00457612 |
| Japanese Patent App. Publication No. 2000/194649 to Takafumi Ito | 2000-07-14 | Ito 1 | MCHP_00457360; MCHP_00457386 |
| Japanese Patent App. Publication No. 2000/196648 to Takafumi Ito | 2000-07-14 | Ito 2 | MCHP_00457394; MCHP_00457433 |
| Japanese Patent App. Publication No. 2003/229879 to Hiroshi Kitamura | 2003-08-15 | Kitamura | MCHP_00457443; MCHP_00457482 |
| Japanese Patent App. Publication No. 2003/256351 to Tadao Furukawa | 2003-09-12 | Furukawa | MCHP_00457546; MCHP_00457612 |
| Japanese Patent App. Publication No. 2004/102716 to Toshihiko Katayama | 2004-04-02 | Katayama | MCHP_00457514; MCHP_00457533 |
| Japanese Patent App. Publication No. 2010/226394 to Yuji Koide, 裕司 小出 | 2010-10-07 | Koide | MCHP_00457826; MCHP_00457926 |
| Japanese Patent No. 5162610B2 to 友則 服部 | 2013-03-13 | Tomonori | MCHP_00458007; MCHP_00458048; MCHP_00458059 |
| Japanese Patent No. JP4210993 to Makoto Zaitsu 誠 材津 | 2009-01-21 | Makoto | MCHP_00457957; MCHP_00457982; MCHP_00457991 |

| Patent No. | Publication Date | Short Cite | Bates # |
|---|---|---|---|
| Korean Patent No. KR100686877B1 to Junchan Lee, Kim Dal-eon | 2007-02-23 | Lee | MCHP_00458087; MCHP_00458094 |
| Korean Patent No. KR100980311B1 to Seonghyo Shin, Seo Woo-il, Lim Tae-seong, Byunghwan Yoon, Yongjin Kim | 2010-09-06 | Shin | MCHP_00458103; MCHP_00458121; MCHP_00458127 |
| Taiwanese Patent App. No. TWM268657U to Jin-Jau Wu | 2005-06-21 | Wu | MCHP_00458479; MCHP_00458482 |
| UK Patent Application No. GB2352540A to Adrian Christopher Dickens, Nigel Anthony Dickens, Mark Arthur Parr | 2003-12-17 | Dickens | MCHP_00457164 |

## 2. Non-Patent Literature

| Document | Publication Date | Short Cite | Bates # |
|---|---|---|---|
| "AU6256 USB2.0 Hub Controller" by Alcor Micro | November 1998 | AU6256 | MCHP_00456981 |
| "AN87216 - Designing a GPIF II Master Interface" by Cypress Perform | 2013-07-29 | AN87216 | MCHP_00456949 |
| "Anchor Chips Single-Chip EZ-Link (AN2720SC)" by Anchor Chips Incorporated | November 1998 | AN2720SC | MCHP_00456947 |
| "SMSC AN 15.0, Configuring the USB2424 via SMBus" by Standard Microsystems Corporation | 2006-08-30 | SMSC App Note | MCHP_00458433 |
| "CYWB0124AB-2006: West Bridge: Antioch USB/Mass Storage Peripheral Controller" by | 2006-10-24 | CYWB012AB | MCHP_00457118 |

11

| Document | Publication Date | Short Cite | Bates # |
|---|---|---|---|
| Cypress Perform | | | |
| "Design and implementation of OTG communication system terminal based on USB" by LIN Zhigui, MENG Dejun, ZHONG Qingqing | 2011-08-25 | Lin III | MCHP_00458141 |
| "Design of a USB OTG mass storage module based on LM3S9B90" by Jie Zang, Xiao Li Wang, Zhong Hua Yan | November 2012 | Zang | MCHP_00460442 |
| "Design of USB multi-function data acquisition system based on MCF5223 by Qian et al." by Qian Qiu-sheng, Wang Yi-huai | January 2010 | Qian | MCHP_00458084 |
| "FSUSB73: 3:1 High-Speed USB Multiplexer and Hub Routing Switch" by Fairchild Semiconductor | 2010 | FSUSB73 | MCHP_00457148 |
| "NET1080 USB TurboCONNECT Preliminary Specification For Revision 2. IC" by NetChip Technology, Inc. | 2000-01-31 | NET1080 | MCHP_00458257 |
| "NXP: USB On-The Go A Tutorial" by NXP B.V. | 2007-07-01 | NXP | MCHP_00458292 |
| "On-The-Go and Embedded Host Supplement to the USB Revision 3.0 Specification, Revision 1.1" by Texas Instruments, Hewlett-Packard, Intel, Microsoft, Renesas, ST-Ericsson | 2012-05-10 | USB OTG Spec. | MCHP_00458304 |

| Document | Publication Date | Short Cite | Bates # |
|---|---|---|---|
| "ISL54200 USB 2.0 High / Full Speed Multiplexer Datasheet" by Renesas | 2010-06-17 | Renesas ISL54200 | MCHP_00457342 |
| "Research of data bidirectional USB transfer technology based on MicroBlaze" by Yao et al. | 2010 | Yao | MCHP_00460434 |
| "USB Multiswitch Hub" by Standard Microsystems Corporation | 2006 | SMSC Multiswitch Hub | MCHP_00459864 |
| "USB4604 USB 2.0 HSIC Hi-Speed 4-Port Hub Controller Datasheet" by Standard Microsystems Corporation | 2013-06-17 | USB4604 | MCHP_00460328 |
| "Universal Serial Bus Specification, Revision 2.0" by Compaq, Hewlett-Packard, Intel, Lucent, Microsoft, NEC, Philips | 2000-04-27 | USB 2.0 Spec | MCHP_00416253 |
| "USB Dual-Mode function IP Core Development" by Yan Yong-Ming, Zeng Yun | March 2006 | Yong-Ming | MCHP_00460438 |
| "Using a USB hi-speed multi-switch hub to connect and share devices in home office and digital living room applications" by Mark Fu | 2006-05-01 | Fu | MCHP_00457161 |

For example, at the time of the purported inventions, the background of the prior art included, and a person of ordinary skill in the art would have known about USB Hubs including a plurality of ports, USB bridges, USB routing switches, the use of USB in vehicle infotainment systems, and creating these types of USB components as integrated circuits.

For example, the USB 2.0 Specification (Universal Serial Bus Specification Revision 2.0),

13

which was created by Compaq, Hewlett Packard, Intel, Lucent, Microsoft, NEC, and Philips, came out on April 27, 2000, over a decade before the earliest alleged priority date of the Asserted Patents. (USB 2.0 Spec (MCHP_00416253).)  Any person of ordinary skill with even minimal experience with USB would have been familiar with this specification and its importance in ensuring interoperability for USB devices.  According to the USB 2.0 Spec, the USB protocol is used to connect a USB Host to a USB Device.  The USB Host controls the communications with the USB Host, and both the Host and Device require certain functionality and features to communicate with each other.  (USB 2.0 Spec, 27-36.)  The Host and Device are two parts of the USB Bus topology, which also includes the physical topology (how the devices are connected), logical topology (roles and responsibilities of the various USB elements and how the USB bus interface appears from the perspective of the Host and Device), and client software-to-function relationship (how client software interacting with a USB device's functionality uses USB software programming interfaces)).  (*Id.*)  The USB 2.0 Spec further includes architectures and standards for a number of different components, including USB Hubs with a plurality of ports, which may include routing logic.  (*Id.*, 297-420.)  The specification also contemplates the use of a bridge between different USB buses.  (*Id.*, 92.)

By 2013, it was further well known that equipment compatible with USB may have both Host and Device capabilities, with the ability to switch between the two.  (USB OTG Spec. (MCHP_00458304).)

Based upon the USB specifications and the other prior art cited, a person of skill would have known that USB hubs were used to connect an upstream device (*e.g.*, USB Host) to multiple downstream devices (e.g., USB Devices) such that the upstream device can communicate with the downstream devices separately and/or simultaneously.  (*E.g.*, USB 2.0 Spec; Wright I (MCHP_00459095);  Chen  I  (MCHP_00459012);  Huang  (MCHP_00459730);  Saito (MCHP_00459808);  Furukawa  (MCHP_00457612);  Tomonori  (MCHP_00458059);  Shin (MCHP_00458127); Wright II (MCHP_00459126); AU6256 (MCHP_00456981).)

A person of skill would have further known that USB Bridges can be used, for example, to

connect two different USB hosts (e.g., different USB buses).  (*E.g..*, USB 2.0 Spec; Liu (MCHP_00459795); AN2720SC (MCHP_00456947); AN87216 (MCHP_00456949); Net1080 (MCHP_00458257); Abramson (MCHP_00458899); Chang III (MCHP_00459442); Wu (MCHP_00459382); Beadnell (MCHP_00459398).)

Furthermore, a person of skill would have known that routing switches can be used to route USB traffic in different directions.  (*E.g.*, USB OTG Spec (MCHP_00458304); Wang (MCHP_00459846); Wu (MCHP_00459382); Yoshida (MCHP_00457612); Yao (MCHP_00460434); Learmonth (MCHP_00459087); Gottfert (MCHP_00457128); Sakaki (MCHP_00458499); Lin I ( MCHP_00459056); Osakada I (MCHP_00458906); Osakada II (MCHP_00458958); Evans (MCHP_00458952); Lai (MCHP_00459035); Chen I (MCHP_00459012); Dunstan (MCHP_00459717); Woodbridge (MCHP_00458530); Chou (MCHP_00458689); Wiler (MCHP_00459211); Ito (MCHP_00457360).)

And a person of skill would have known that these types of components were commonly built into vehicles including into infotainment systems.  (*E.g.*, Sugao (MCHP_00457669); Overtoom I (MCHP_00460399); Choi (MCHP_00459296); Hyde (MCHP_00457219).)

All of this would have been known by at least persons of ordinary skill in the art—as well as the general public—prior to the earliest priority date identified in Aptiv's Supplemental Responses to Defendant's First Set of Interrogatories, served September 13, 2023.

## B. Prior Art That Invalidates the Asserted Patents

Microchip identifies the following prior art as anticipating the Asserted Claims of the Asserted Patents under 35 U.S.C. § 102 and/or rendering each and every Asserted Claim obvious under 35 U.S.C. § 103, combined with background knowledge of a person of ordinary skill in the art at the time of the alleged invention of the Asserted Patents and/or each other as set forth in Exhibits A-1 to F-12:

### 1. Patents

Microchip identifies the following patent publications.

15

| Patent No./Short Cite/Bates # | Title | Author(s) | Priority Date | Publication Date |
|---|---|---|---|---|
| U.S. Patent Application No. 2006/0206650A1 ("Chang I") MCHP_00458540 | Hub with a host-to-host transmission function | Ming-Te Chang | 2005-08-16 | 2006-09-14 |
| U.S. Patent Application No. 2009/0268743A1 ("Chang II") MCHP_00458666 | Data transmission bridge device and control chip thereof for transmitting data | Chi-Tung Chang, Shih-Min Lan and Jia-Lung Wang | 2008-05-22 | 2009-10-29 |
| U.S. Patent No. 5,784,581 ("Hannah") MCHP_00458886 | Apparatus and method for operating a peripheral device as either a master device or a slave device | Eric C. Hannah | 1996-05-03 | 1998-07-21 |
| U.S. Patent No. 6,516,205 ("Oguma") MCHP_00458926 | Portable terminal with bus manager switching function | Kenji Oguma | 2000-04-25 | 2003-02-04 |
| U.S. Patent No. 7,073,010 ("Chen I") MCHP_00459012 | USB smart switch with packet re-ordering for interleaving among multiple flash-memory endpoints aggregated as a single virtual USB endpoint | Ben Wei Chen, Horng-Yee Chou and Sun-Teck See | 2003-12-02 | 2006-07-04 |
| U.S. Patent No. 7,152,190 ("Overtoom II") MCHP_00459044 | USB OTG intelligent hub/router for debugging USB OTG devices | Eric J. Overtoom | 2004-02-03 | 2006-12-19 |

16

| Patent No./Short Cite/Bates # | Title | Author(s) | Priority Date | Publication Date |
|---|---|---|---|---|
| U.S. Patent No. 7,162,566 ("Lin I") MCHP_00459056 | USB-based host-to-host networking method | Hao Hsing Lin | 2004-06-14 | 2007-01-09 |
| U.S. Patent No. 7,480,753 ("Bohm II") MCHP_00459111 | Switching upstream and downstream logic between ports in a universal serial bus hub | Mark R. Bohm, Donald L. Perkins and Carl J. Crawford | 2006-04-27 | 2009-01-20 |
| U.S. Patent No. 7,502,878 ("Wright II") MCHP_00459126 | Method and apparatus for switching USB devices between multiple USB hosts | David G. Wright | 2004-06-18 | 2009-03-10 |
| U.S. Patent No. 7,506,077 ("Hesse") MCHP_00459145 | Unified controller having host and device functionality | Kay Hesse | 2005-06-22 | 2009-03-17 |
| U.S. Patent No. 7,523,243 ("Bohm I") MCHP_00459159 | Multi-host USB device controller | Mark R. Bohm and Atish Ghosh | 2006-06-21 | 2009-04-21 |
| U.S. Patent No. 8,332,547 ("Sugaya") MCHP_00459262 | Power exchange device, power exchange method, program, and power exchange system | Shigeru Sugaya | 2009-04-01 | 2012-12-11 |
| U.S. Patent No. 8,417,860 ("Choi") MCHP_00459296 | Hybrid in-vehicle infotainment network | Dave Choi | 2010-08-05 | 2013-04-09 |
| U.S. Patent No. 8,447,598 | Vehicle user interface systems | Richard J. Chutorash, | 2011-01-14 | 2013-05-21 |

17

| Patent No./Short Cite/Bates # | Title | Author(s) | Priority Date | Publication Date |
|---|---|---|---|---|
| ("Chutorash") MCHP_00459306 | and methods | Elisabet Anderson, Rodger W. Eich, Jeffrey Golden, Philip J. Vanderwall, and Michael J. Sims | | |
| U.S. Patent No. 8,447,890 ("LeTourneur") MCHP_00459344 | Operation of multiple masters/hosts through a hub | Herve LeTourneur and Hans Van Antwerpen | 2010-11-01 | 2013-05-21 |
| U.S. Patent No. 8,447,893 ("Tauscher") MCHP_00459360 | USB peripheral device comprising limited function USB host controller | Brian E. Tauscher and Michael Izquierdo | 2012-06-13 | 2013-05-21 |
| U.S. Patent No. 8,484,403 ("Wu") MCHP_00459382 | KVM switch apparatus with bridging function | Hung-June Wu and Cheng-Sheng Chou | 2010-09-09 | 2013-07-09 |
| U.S. Patent No. 8,504,755 ("Beadnell") MCHP_00459398 | USB 3 bridge with embedded hub | Duncan Beadnell, Neil Buxton, and Gary Calder | 2010-03-03 | 2013-08-06 |
| U.S. Patent No. 8,533,380 ("Chang III") MCHP_00459442 | Apparatus for peer-to-peer communication over a universal serial bus link | Ming-Te Chang | 2011-07-13 | 2013-09-10 |
| U.S. Patent No. 8,683,085 ("Castleberry") MCHP_00459551 | USB interface configurable for host or device mode | Jim Castleberry and David Luke | 2009-05-01 | 2014-03-25 |
| U.S. Patent No. 8,694,803 | Controlling power received | Mansour Rafiee | 2010-11-19 | 2014-04-08 |

18

| Patent No./Short Cite/Bates # | Title | Author(s) | Priority Date | Publication Date |
|---|---|---|---|---|
| ("Rafiee") MCHP_00460543 | through multiple bus interfaces in a portable computing device | | | |
| U.S. Patent No. 8,762,605 ("Terlizzi") MCHP_00459565 | Adapter for electronic devices | Jeffrey J. Terlizzi, Daniel J. Fritchman, Scott Krueger, Terry Tikalsky, Debra A. Sillman, and Tony Chi Wang Ng | 2012-09-07 | 2014-06-24 |
| U.S. Patent No. 8,880,909 ("Tom") MCHP_00459587 | Auto-detect polling for correct handshake to USB client | Steven R. Tom and Leland Scott Swanson | 2010-05-05 | 2014-11-04 |
| Japanese Patent No. JP2009/116788 ("Sugao") MCHP_00457636; MCHP_00457669 | Data transfer system and navigator | Masaichi Sugao | 2007-11-09 | 2009-05-28 |
| Japanese Patent No. JP2010/093437 ("Yamada") MCHP_00457724; MCHP_00460468 | Data transfer control device, and electronic equipment | Chihiro Yamada and Takuya Ishida | 2008-10-06 | 2010-04-22 |
| Taiwanese Patent No. TW390984B ("Shiu") MCHP_00458450; MCHP_00458457 | The USB bridge connection apparatus for host to host | Shuo-Yang Shiu | 1998-07-01 | 2000-05-21 |
| WO 2004/012090 ("Overtoom I") MCHP_00460399 | Dual-role compatible usb hub device and | Eric J. Overtoom, Mark R. Braun and Mark Carlson | 2003-07-08 | 2004-02-05 |

19

| Patent No./Short Cite/Bates # | Title | Author(s) | Priority Date | Publication Date |
|---|---|---|---|---|
| | method | | | |

### 2. Non-Patent Literature

Microchip identifies the following non-patent publications.

| Title | Author | Publication Date | Bates # |
|---|---|---|---|
| "An embedded USB dual-role system integrated for mobile devices" | J. Ducloux, P. Petrashin, W. Lancioni and L. Toledo | 2012-09-10 | MCHP_00457141 |
| "Communications Between Two Hosts Using The Universal Serial Bus Protocol" | Reshma Murthy | 1998-05-01 | MCHP_00458166 |
| "GL620USB-A: GeneLink USB PC-to-PC Networking Controller, Specification 1.6" | Genesys Logic, Inc. | 2000-11-17 | MCHP_00457205 |
| "USB Multi-Role Device Design By Example" | John Hyde | 2003 | MCHP_00457219 |
| "USB2412 2-Port USB 2.0 Hi-Speed Hub Controller Datasheet" | Standard Microsystems Corporation | 2011-12-27 | MCHP_00460243 |
| "USB2517 USB 2.0 Hi-Speed 7-Port Hub Controller Datasheet" | Standard Microsystems Corporation | 2012-09-17 | MCHP_00460271 |
| "USB4604 USB 2.0 HSIC Hi-Speed 4-Port Hub Controller Datasheet" | Standard Microsystems Corporation | 2013-06-17 | MCHP_00460328 |
| AN87216 - Designing a GPIF II Master Interface | Cypress Perform | 2013-07-29 | MCHP_00456949 |
| M5632: USB2.0 Host-to-Host Networking Controller, Preliminary Product Brief | Ali Corporation | 2013-09-18 | MCHP_00458145 |

| Title | Author | Publication Date | Bates # |
|---|---|---|---|
| MAX4899E/MAX4899AE - USB 2.0 HighSpeed, Fault-Tolerant 3:1, 4:1 Multiplexers Rev. 0 | Maxim Integrated Products | 2006-07-01 | MCHP_00458146 |
| PL-2302 USB-to-USB Bridge Pro Data Sheet, Rev. 1.0 | Prolific Technology Inc. | 2002 | MCHP_00458393 |
| PL-2501 Hi-Speed USB Host-to-Host Bridge Controller, Product Brochure V1.0 | Prolific Technology Inc. | 2002-09-11 | MCHP_00458407 |
| PL-25A1 Hi-Speed USB Host-to-Host Bridge Controller (Chip Revision B) Product Datasheet | Prolific Technology Inc. | 2007-03-08 | MCHP_00458408 |
| Universal Serial Bus Revision 2.0 Specification | | 2000-04-27 | MCHP_00416253 |
| Universal Serial Bus Power Delivery Specification, Rev. 1.0 | | 2012-07-05 | MCHP_00459940 |
| USB Power Delivery 2.0 – End Of The Line For The Power Brick ("Powers") | Nick Powers, Arrow Electronics, Inc. | 2015-09-01 | MCHP_00460491 |
| USB3740 - High Speed Switch for Mobile and Portable Applications | SMSC | 2012-07-30 | MCHP_00460447 |

### 3.  Systems and Products

Microchip identifies the following systems and/or products, which shall be considered a single prior art reference, regardless of whether that instrumentality is described by multiple patents, publications, or other material (collectively, the "supporting documents").  In other words, each prior art "instrumentality" is one prior art "reference," and Microchip has identified the supporting documents as exemplary materials that describe each such prior art instrumentality.  To the extent Microchip relies on these instrumentalities as systems and/or products, the individual supporting documents themselves shall not be considered separate prior art references for any limitation on the total number of prior art references to be asserted.

Each supporting document is independently prior art under 35 U.S.C. § 102 because it was published before the earliest possible asserted priority date of September 26, 2013 for the Asserted Claims.  Thus is document, alone or in combination with other references as explained below and in  Exhibits  A-1 to F-12 and/or the knowledge of a person of ordinary skill also independently renders obvious the claims of the Asserted Patents.

| System | Supporting Documents |
|---|---|
| USB4604 HSIC Hi-Speed 4-Port Hub Controller | • USB4604 Datasheet Rev. 1.0 (June 17, 2013) ("USB4604 Datasheet")<br><br>• MCHP_00447040<br><br>• MCHP_00447090<br><br>• MCHP_00447190<br><br>• MCHP_00451703<br><br>• MCHP_00453180<br><br>• MCHP_00453235 |
| GL620USB-A | • "GL620USB-A: GeneLink USB PC-to-PC Networking Controller, Specification 1.6" |
| USB2412 2-Port USB 2.0 Hi-Speed Hub Controller | • "USB2412 2-Port USB 2.0 Hi-Speed Hub Controller Datasheet" |
| USB2517 USB 2.0 Hi-Speed 7-Port Hub Controller | • "USB2517 USB 2.0 Hi-Speed 7-Port Hub Controller Datasheet" |
| AN87216 | • AN87216 - Designing a GPIF II Master Interface |
| M5632 | • M5632: USB2.0 Host-to-Host Networking Controller, Preliminary Product Brief |
| MAX4899E/MAX4899AE | • MAX4899E/MAX4899AE - USB 2.0 HighSpeed, Fault-Tolerant 3:1, 4:1 Multiplexers Rev. 0 |

| PL-2302 USB-to-USB Bridge | • PL-2302 USB-to-USB Bridge Pro Data Sheet, Rev. 1.0 |
|---|---|
| PL-2501 Hi-Speed USB Host to Host Bridge | • PL-2501 Hi-Speed USB Host-to-Host Bridge Controller, Product Brochure V1.0 |
| PL-25A1 Hi-Speed USB Host-to-Host Bridge | • PL-25A1 Hi-Speed USB Host-to-Host Bridge Controller (Chip Revision B) Product Datasheet |
| USB3740 | • USB3740 - High Speed Switch for Mobile and Portable Applications |

## II.    DISCLOSURES REGARDING ANTICIPATION AND OBVIOUSNESS

### A.    Obviousness of the Asserted Patents

Accompanying Exhibits A-1 to F-12 are exemplary invalidity charts that identify prior art combinations that render obvious the Asserted Claims of the Asserted Patents under 35 U.S.C. § 103.

Exhibits A-1 to F-12 identify specific examples of where a prior art reference discloses—either expressly, implicitly in the larger context of the passage, or inherently—each limitation of the Asserted Claims and/or examples of disclosures in view of which a person of ordinary skill in the art would have considered each limitation anticipated and/or obvious. For many prior art references and claim elements, the prior art reference discloses the claim element in multiple places (including any of the supporting documents used to describe each prior art instrumentality) and/or there are multiple descriptions of where and how the prior art reference discloses the claim element. Thus, Microchip has provided exemplary citations to descriptions of where each element of the Asserted Claims is found within each prior art reference. Microchip may rely on other descriptions of where each element of the Asserted Claims is found within each prior art reference. In instances where Microchip cites a particular figure or table in a prior art reference, the citation should be understood to encompass the caption and description of the figure or table, as well as any text relating to that figure or table. Similarly, where a cited portion of text refers to a figure

23

or table, the citation should be understood to include the figure or table as well.

In addition, Exhibits A-1 to F-12 include examples of where the prior art discloses the subject matter recited in the preambles of the Asserted Claims without regard to whether the preambles are properly considered to be limitations of these claims.

In Exhibits A-1 to F-12, Microchip has endeavored to identify the most relevant portions of the references. But the references may contain additional support for particular claim limitations—including additional invalidity support for ambiguous terms, phrases, or clauses for which it is unclear how Aptiv purports to construe the term/phrase/clause or how it should be properly construed. Microchip reserves the right to rely on uncited portions of prior art references, other documents and/or instrumentalities, and fact and/or expert testimony to provide context or to aid in understanding the references and/or cited portions thereof. Moreover, Microchip may rely on admissions concerning the scope of the prior art relevant to the Asserted Patents found in, *inter alia*, (1) the patents themselves, including any references cited therein; (2) the patent prosecution history for the Asserted Patents and related patents and/or patent applications, including any references cited therein; (3) any testimony or declarations of named inventor(s) or other fact or expert witnesses concerning the prior art, the Asserted Patents, and/or related patents and/or patent applications; (4) any papers filed or evidence submitted by Aptiv in connection with this litigation or in any other pending or future proceeding involving Aptiv or any of its predecessors-in-interest, one or more of the Asserted Patents, or any related patents; or (5) other evidence, including fact and expert testimony, to prove that the Asserted Claims are anticipated and/or rendered obvious under 35 U.S.C. §§ 102 and/or 103.

The table below identifies the primary reference(s) in each exhibit.

| Charts | Prior Art Reference |
|---|---|
| A-1 ('037 Patent) | |
| B-1 ('420 Patent) | Chang I in view of Chang II |
| C-1 ('962 Patent) | |

24

| Charts | Prior Art Reference |
|---|---|
| D-1 ('899 Patent) | |
| E-1 ('072 Patent) | |
| F-1 ('643 Patent) | |
| A-2 ('037 Patent) | Chang I |
| B-2 ('420 Patent) | |
| C-2 ('962 Patent) | |
| D-2 ('899 Patent) | |
| E-2 ('072 Patent) | |
| F-2 ('643 Patent) | |
| A-3 ('037 Patent) | Chang II |
| B-3 ('420 Patent) | |
| C-3 ('962 Patent) | |
| D-3 ('899 Patent) | |
| E-3 ('072 Patent) | |
| F-3 ('643 Patent) | |
| A-4 ('037 Patent) | LeTourneur |
| B-4 ('420 Patent) | |
| C-4 ('962 Patent) | |
| D-4 ('899 Patent) | |
| E-4 ('072 Patent) | |
| F-4 ('643 Patent) | |
| A-5 ('037 Patent) | USB4604 |
| B-5 ('420 Patent) | |
| C-5 ('962 Patent) | |
| D-5 ('899 Patent) | |

| Charts | Prior Art Reference |
|---|---|
| E-5 ('072 Patent) | |
| F-5 ('643 Patent) | |
| A-6 ('037 Patent) | Hyde |
| B-6 ('420 Patent) | |
| C-6 ('962 Patent) | |
| D-6 ('899 Patent) | |
| E-6 ('072 Patent) | |
| F-6 ('643 Patent) | |
| A-7 ('037 Patent) | Yamada |
| B-7 ('420 Patent) | |
| C-7 ('962 Patent) | |
| D-7 ('899 Patent) | |
| E-7 ('072 Patent) | |
| F-7 ('643 Patent) | |
| A-8 ('037 Patent) | Terlizzi |
| B-8 ('420 Patent) | |
| C-8 ('962 Patent) | |
| D-8 ('899 Patent) | |
| E-8 ('072 Patent) | |
| F-8 ('643 Patent) | |
| A-9 ('037 Patent) | Choi |
| B-9 ('420 Patent) | |
| C-9 ('962 Patent) | |
| D-9 ('899 Patent) | |
| E-9 ('072 Patent) | |

| Charts | Prior Art Reference |
|---|---|
| F-9 ('643 Patent) | |
| A-10 ('037 Patent) | USB2412 |
| B-10 ('420 Patent) | |
| C-10 ('962 Patent) | |
| D-10 ('899 Patent) | |
| E-10 ('072 Patent) | |
| F-10 ('643 Patent) | |
| A-11 ('037 Patent) | USB2517 |
| B-11 ('420 Patent) | |
| C-11 ('962 Patent) | |
| D-11 ('899 Patent) | |
| E-11 ('072 Patent) | |
| F-11 ('643 Patent) | |
| A-12 ('037 Patent) | Bohm II |
| B-12 ('420 Patent) | |
| C-12 ('962 Patent) | |
| D-12 ('899 Patent) | |
| E-12 ('072 Patent) | |
| F-12 ('643 Patent) | |

The references in the table above are combined with one or more of the secondary references listed below as indicated in Exhibits A-1 to F-12:

| Type of Reference | Secondary References |
|---|---|
| Vehicle References | Yamada, USB4604, Choi, Sugao, USB2412, Chutorash, or Overtoom I |
| Bridge References | Chang I, Chang II, PL-25A1B, PL-2302, PL-2501, Murthy-1998, LeTourneur, Lin I, |

27

| Type of Reference | Secondary References |
|---|---|
|  | Terlizzi, AN87216, GL620USB, M5632, Chang III, Wu, or GL620USB-A |
| Switch References | Chang II, Ducloux-2012, LeTourneur, USB4604, Yamada, MAX4899E/MAX4899AE, Hesse, Overtoom I, Overtoom II, Sugao, Chutorash, Hannah, Chang III, USB3740, Terlizzi, or Oguma |
| Hub References | Chang I, Yamada, Choi, USB4604, or USB2412 |
| Analog Switch References | Renesas ISL54200, MAX4899AE/MAX4899A, FSUSB73, or Wright II |
| Digital Routing Logic References | Tauscher or Wright II |
| Integrated Circuit References | Chang I, LeTourneur, USB4604, or Lin I |
| Buffer References | USB 2.0 Spec, Wright 2, PL-25A1, Hyde, Murthy-1998, M5632, Shiu, Chen I, Lin I, Hesse, or Beadnell |
| Pipe References | USB OTG Spec, USB 2.0 Spec, Murthy-1998, Lin I, or McGowan |
| USB Power Delivery Specification | USB 2.0 Spec, Beadnell, Lin I, Chen I, Murthy-1998, Castleberry, Sugaya, Tom, Powers, USB Power Delivery Specification Rev. 1.0 July 5, 2012 |
| Handshake References | USB 2.0 Spec, Beadnell, Lin I, Chen I, Murthy-1998, Castleberry, Sugaya, Tom, Powers, USB Power Delivery Specification Rev. 1.0 July 5, 2012 ("USB Power Delivery Specification"), or USB Power Delivery Specification Rev. 3.0 V1.0a Mar. 25, 2016, or USB Type-C Cable or Connector Specification, Rev. 1.2 March 25, 2016 |
| USB Power Specs | Powers, USB Power Delivery Specification Rev. 1.0 July 5, 2012, or USB Power Delivery Specification Rev. 3.0 V1.0a Mar. 25, 2016, or USB Type-C Cable or Connector |

28

| Type of Reference | Secondary References |
|---|---|
|  | Specification, Rev. 1.2 March 25, 2016 |

As explained herein and/or in the accompanying charts, it would have been obvious to a person of ordinary skill in the art at the time of the alleged inventions claimed in the Asserted Patents to combine the various references cited herein to arrive at the Asserted Claims.

The ultimate determination of whether an invention is or is not obvious is a legal conclusion based on underlying factual inquiries including "(1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness." *Miles Labs., Inc. v. Shandon, Inc.*, 997 F.2d 870, 877 (Fed. Cir. 1993); *see also Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17–18 (1966). The U.S. Supreme Court's decision in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 415–16 (2007), reaffirmed *Graham*, and further held that a claimed invention can be obvious even if there is no teaching, suggestion, or motivation for combining the prior art to produce that invention. In summary, *KSR* holds that patents based on new combinations of elements or components already known in a technical field may be found to be obvious. *See generally KSR*, 550 U.S. 398. Specifically, the Court in *KSR* rejected a rigid application of the "teaching, suggestion, or motivation [to combine]" test. *Id*. at 418–19. "In determining whether the subject matter of a patent claim is obvious, neither the particular motivation or the avowed purpose of the patentee controls. What matters is the objective reach of the claim." *Id*. at 419. "Under the correct analysis, any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id*. at 420. In particular, in *KSR*, the Supreme Court emphasized the principle that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id*. at 416. A key inquiry is whether the "improvement is more than the predictable use of prior art elements according to their established functions." *Id*. at 417.

With regard to motivation to combine and other obviousness factors, a person of ordinary

29

skill in the art at the time of the alleged invention of the Asserted Patents would have been motivated to combine each of the prior art references identified in the accompanying charts and would have had a reasonable expectation of success in doing so. The motivation and/or incentive to combine these references comes from many sources, including, but not limited to, the known, published prior art references and products themselves; the background knowledge of those of ordinary skill in the art, including the references listed in Section I.A; the common field of technology of the references; and the teachings in the references directed to solving the problem that the Asserted Patents were allegedly directed to solving. These references identify and address many of the same technical issues and suggest similar solutions to those issues. Accordingly, the teachings of the individual prior art references, combined with the background knowledge of a person of ordinary skill in the art at the time of the alleged invention of the Asserted Patents, would have rendered obvious the Asserted Claims for at least the reasons described below and in the accompanying charts. Furthermore, a person of skill would have had a reasonable expectation of success in doing so for the same reasons, e.g., the references identify and address many of the same technical issues and suggest similar solutions to those issues, the teachings in the references directed to solving the same problem, and the standards required specific functionalities.

Microchip generally contends that the Asserted Claims of the Asserted Patents would have been obvious because they, at most, only slightly modify a known solution to a common issue at the time or merely arrange old elements, with each performing the same function that had previously been known, to perform and yield no more than what one of ordinary skill would expect from such an arrangement. For example, as already explained in the background state of the art, USB was a well-known standard for data transfer using a certain type of port and all of the charted references relate to types of USB systems. As such, specific types of USB components, including USB hubs, ports, bridges, and switches, were all well known in the art and combining those known components would have had an obvious, understood result. As another example, infotainment systems in vehicles in which the customer could connect a music player or smartphone to the vehicle's sound system via USB to play media were becoming very common.

30

At the time of the invention, moreover, a person of skill would have understood that a single device can act as both USB Host and USB Device.  The USB Specification was amended to add "On-the-Go" capabilities to account for that, and certain manufacturers specifically set forth the capability to act as both USB Host and USB Device in their product specifications.  *See* USB OTG Spec; APL-APTIV_00002698 at -722; *see also* Overtoom I, 6:7-24 (explaining that with the use of OTG devices, "[w]hen a device connected to one of the A-ports desire to obtain host control, . . . the hub 102 will transfer host control to that device in accordance with the host negotiation protocol (HNP) described in the OTG supplement to the USB 2.0 specification" and the OTG device can "cease being the host device").  A person of skill would have therefore understood that a consumer device that connects to a downstream port could act as both USB Host and USB Device.

Before the claimed September 26, 2013 priority date of the Asserted Patents, the infotainment system in a vehicle acted like the USB host, and the connected device would act as the USB device.  (*See also Microchip Tech. Inc. v. Aptiv Servs US, LLC*, No. 17-1194 (D. Del.) ("Aptiv I Litigation"), Trial Transcript, vol. 4, 52:3-7 (R. Voto testimony).)  But, some companies, like Apple, wanted their devices to operate as a second USB Host.  (*See* APL-APTIV_00002698 at -722.)  Thus, a person of skill therefore would have been motivated to explore ways to connect an infotainment system (which was a USB host) to a device that also wanted to act as a host. (Aptiv I Litigation Trial Transcript, vol. 4, 52:3-7 (R. Voto testimony).)  Furthermore, a person of skill would have recognized that there are certain benefits to having both the infotainment system and a device (such as a media player) act as a USB host including, for example, being able to control media from the infotainment system and the media player.  Furthermore, USB multiplexing switches were widely used and there are many additional examples that were available at the time of the alleged inventions, including at least Renesas ISL54200, Microchip USB3750, Pericom PI3USB20, and Aten US401.

Thus, a person of ordinary skill in the art would have been motivated to combine prior art references in the manner identified and/or with the person of ordinary skill in the art's own

knowledge.  Additional reasons or motivations to implement such combinations and modifications are provided in each Exhibit.  To the extent that Aptiv challenges a combination of prior art identified by Microchip, Microchip reserves the right to supplement these Initial Invalidity Contentions to further specify the reason or motivation to combine the prior art in the manner suggested.

The obviousness combinations provided are exemplary and are not intended to be exhaustive.  In addition to the specific prior art references and combinations of prior art references identified above, the further combination of these references and combinations with the background knowledge of a person of ordinary skill in the art at the time of the alleged invention render obvious the Asserted Claims of the Asserted Patents.  Additional obviousness combinations of the references identified above or references yet to be identified are possible, and Microchip reserves the right to use any such combination(s) in this litigation.  In particular, Microchip is currently unaware of the extent, if any, to which Aptiv will contend that limitations of the Asserted Claims are not disclosed in the art identified by Microchip.  To the extent that Aptiv contends that a particular claim limitation is allegedly missing in a particular reference, a person of ordinary skill in the art would have found it obvious to combine that reference with any of the other references cited herein or in the accompanying charts to arrive at the allegedly missing claim limitation.  Microchip further reserves the right to identify other references that would have made obvious the addition of the allegedly missing limitation to the disclosed product or method.

## B.    Secondary Considerations

Microchip is not aware of any evidence that: (1) Aptiv developed a product embodying the claimed subject matter of any Asserted Claim that has enjoyed commercial success because of the alleged invention; (2) any Asserted Claim is directed to any long-felt but unresolved need; (3) any Asserted Claim addresses any failure of others; (4) there is teaching away from the claimed subject matter by the prior art; (5) the claimed subject matter of any Asserted Claim has been copied or acclaimed by others; or (6) experts would have been skeptical of the claimed approach or idea set forth in the Asserted Claims.  Nor is Microchip aware of any evidence that there is a nexus between

any such secondary consideration and any Asserted Claim.

In Aptiv's response to Microchip's Interrogatory, Aptiv provided an unsupported narrative regarding the alleged commercial success of the Dual Role Hub, which allegedly practices the invention, and Microchip's alleged doubt of Aptiv's supposed invention.  Aptiv, however, fails to tie these alleged secondary considerations to the claimed inventions and fails to provide any evidence to support its allegations.  Microchip reserves the right to supplement these Initial Invalidity Contentions with respect to secondary considerations should Aptiv adequately identify such secondary considerations and/or their alleged nexus to the Asserted Claims.

## III.    GROUNDS OF INVALIDITY OTHER THAN ANTICIPATION OR OBVIOUSNESS

Each and every Asserted Claim is also invalid for failure to meet one or more of the requirements of 35 U.S.C. § 112.

Microchip reserves the right to amend, supplement, and/or otherwise modify these Invalidity Contentions with respect to grounds of invalidity other than anticipation or obviousness. Due in part to Aptiv's failure to identify sufficiently (a) what instrumentalities Aptiv contends directly infringe each Asserted Patent and (b) where Aptiv contends that each element of each asserted claim is found within each accused instrumentality, Microchip lacks a complete understanding of Aptiv's alleged infringement and/or claim construction positions.  To the extent that Aptiv later discloses an infringement and/or claim construction theory that implicates infringement by Microchip, Microchip reserves the right to argue that the specification does not enable and/or provide a written description for such an interpretation or that such an interpretation renders the claim indefinite.

Microchip lists below exemplary grounds upon which Microchip presently contends the Asserted Claims of the Asserted Patents are invalid for failure to meet one or more of the requirements of 35 U.S.C. § 112.  Microchip identifies at least the following grounds of invalidity based on inadequate written description under 35 U.S.C. § 112(a), invalidity based on lack of enablement under 35 U.S.C. § 112(a), and invalidity based on indefiniteness under 35 U.S.C

§ 112(b) for the Asserted Claims.  These grounds are identified based on knowledge in Microchip's possession at this time.  A more detailed basis for Microchip's written description, enablement, and/or indefiniteness defenses will be set forth in Microchip's claim construction briefs and expert reports on invalidity to be served in accordance with the schedule entered by the Court (D.I. 34).

### A.    Invalidity under 35 U.S.C. § 112(b) (Indefiniteness)

Below is an exemplary list of claim elements[1] that are indefinite and/or render claims that include such elements indefinite under 35 U.S.C. § 112(b).  For example, certain claim limitations "fail to inform, with reasonable certainty, those skilled in the art at the time of the alleged invention about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014); *see also Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1348 (Fed. Cir. 2002) (quoting *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1377 (Fed. Cir. 2000) ("[F]irst, [the claim] must set forth what 'the applicant regards as his invention' and second, it must do so with sufficient particularity and distinctness, i.e., the claim must be sufficiently 'definite.'") (second alteration in original)).  For example, certain claim limitations are derived from a test that is either undefined, or would be understood by a person having ordinary skill in the art to be derived from multiple test methods that yield dissimilar results.  *See, e.g.*, *Dow Chem. Co. v. Nova Chems. Corp. (Can.),* 803 F.3d 620, 631–35 (Fed. Cir. 2015), *cert. denied*, 578 U.S. 1003 (2016) (claims reciting "slope of strain hardening" ruled indefinite because three methods existed to determine the maximum slope, the methods do not always produce the same results, and the method chosen for calculating the "slope of strain hardening" could affect whether or not a given product infringes the claim); *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015) (claim reciting "molecular weight" ruled indefinite because "molecular weight" could be calculated in

---

[1]   Any discrepancy between the language included in this section and the language of the corresponding claim element is inadvertent, and it is Microchip's contention that, even with the correct language, the claim element is not adequately described and/or enabled under 35 U.S.C. § 112(a) and/or is indefinite under 35 U.S.C § 112(b).

three different ways, each calculation yields different results, and the specification does not specify which calculation to use); *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1339–40 (Fed. Cir. 2003) (claim reciting "melting point elevation" ruled indefinite because four sample preparation methods could be used when measuring "melting point elevation," use of each method yields different results, and the specification does not specify which method to use).  As an additional example, certain claim limitations use terms of degree, wherein the specification fails to provide a standard for measuring that degree and thus fails to adequately notify the public of the patentee's right to exclude.  *See Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1352-53 (Fed. Cir. 2005); *see also Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, No. 15-cv-1168-LPS, 2017 WL 1334733, at *7 (D. Del. April 7, 2017); *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1372 (Fed. Cir. 2014) (finding a term indefinite where "the claims and the written description fails to provide the clarity that the subjective claim language needs").

Further, to the extent the Court does not construe the means-plus-function terms identified below as indefinite, those terms are separately indefinite under 35 U.S.C. § 112(b) because they "fail to inform, with reasonable certainty, those skilled in the art at the time of the alleged invention about the scope of the invention." *See, e.g.*, *Nautilus*, 572 U.S. at 901.

Pursuant to 35 U.S.C. § 112(f),

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

Where a term lacks the words "means," there is a rebuttable presumption that § 112(f) does not apply, but that presumption is not a "strong" one, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (*en banc*), and is overcome when "the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function," *Diebold Nixdorf, Inc. v. Int'l Trade Comm'n*, 899 F.3d 1291, 1298 (Fed. Cir. 2018). "Generic terms such as 'mechanism,' 'element,' 'device,' and other nonce words that reflect

35

nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means' because they 'typically do not connote sufficiently definite structure' and therefore may invoke § 112[(f)]." *Williamson*, 792 F.3d at 1350 (citing *Mass. Inst. Of Tech. & Elecs. for Imaging, Inc.  v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006)).

Because Microchip's investigation, prior art search, analysis, discovery, and trial preparation are still ongoing, Microchip expressly reserves the right to amend, supplement, and/or otherwise modify these Initial Invalidity Contentions, including by identifying and providing additional evidence and arguments that the Asserted Claims are indefinite under 35 U.S.C. § 112(b) following Aptiv's reduction(s) of the number of asserted claims pursuant to Scheduling Order (D.I. 34) and/or any constructions proposed by Aptiv or adopted by the Court.

Any deficiencies that render claims invalid for indefiniteness under 35 U.S.C. § 112(b) also infect and thereby invalidate any and all claims depending therefrom—including any dependent claims asserted by Aptiv.

At least the following claim elements, or portions thereof, used in the Asserted Patents are indefinite under 35 U.S.C. § 112(b) for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention:

- "USB Hub" or "USB hub" ('037 Patent, cl. 1; '420 Patent, cls. 1, 7, 13, 15, 18; '962 Patent, cls. 1, 14; '899 Patent, cl. 1; '072 Patent, cl. 1; '643 Patent, cls. 1, 5, 10); and "USB Hub Module" or "USB hub module" ('037 Patent, cls. 4, 6, 7; '420 Patent, cls. 1, 2, 3, 4, 5, 6, 13, 15, 16, 17; '962 Patent, cl. 1-13, 18)

  o As used in the context of the claim language, these claim elements are indefinite for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention as claimed.  For example, the scope of these terms is unclear, particularly in relation to each other, i.e., the difference between "USB hub" and "USB hub module" is unclear.

- "configured to dynamically switch operation of USB Ports connected to the USB Hub Module between USB Device mode and USB Host mode" ('037 Patent, cl. 6);

"wherein the USB hub module is configured to dynamically switch operation of the second USB port between supporting the consumer device in the USB device mode or the USB host mode" ('420 Patent, cl. 4); "wherein the integrated circuit is configured to dynamically switch operation of the second USB port between supporting the consumer device in the USB device mode or the USB host mode" ('420 Patent, cl. 10); "wherein the USB hub module is configured to dynamically switch operation of the plurality of downstream USB between a USB device mode and a USB host mode" ('962 Patent, cl. 4); "dynamically switching operation of USB Ports connected to the USB Hub Module between USB Device mode and USB Host mode" ('899 Patent, cl. 4)

- o As used in the context of the claim language, these claim elements are indefinite for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention as claimed.  For example, the meaning of "dynamically" is unclear.

- "simultaneously broadcast data" ('037 Patent, cl. 1; '899 Patent, cl. 1)

- o As used in the context of the claim language, these claim elements are indefinite for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention as claimed.  For example, the meaning of "simultaneously" is unclear.

- "simultaneously provide the second communication path between said first USB port and said third USB port without interrupting the first communication path between said first USB port and said second USB port" ('420 Patent, cl. 20); "wherein the USB routing switch is configured to simultaneously connect a second USB Port of the plurality of USB Ports directly to the USB Hub when a second consumer device connected to the second USB Port is the USB Device, thereby rendering the first and second consumer devices compatible to function simultaneously with the embedded USB Host system" ('037 Patent, cl. 2); and

37

"wherein the USB routing switch is configured to simultaneously connect a second downstream USB port of the plurality of downstream USB ports directly to the USB hub when a second consumer device connected to the second downstream USB port is acting as a USB device, thereby rendering the first and second consumer devices compatible to communicate simultaneously with the upstream USB port" ('962 Patent, cl. 2, 15)

- As used in the context of the claim language, these claim elements are indefinite for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention as claimed. For example, the meaning of "simultaneously" is unclear with respect to the second communication path.

- "initiate bidirectional communication" ('037 Patent, cl. 1; '962 Patent, cls. 1, 14; '899 Patent, cl. 1); and "bidirectional initiation of communication" ('420 Patent, cls. 1, 7, 13, 15, 18)

- As used in the context of the claim language, these claim elements are indefinite for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention as claimed. For example, the meaning of "initiate" is unclear in relation to the bidirectional communication.

- "connect the first USB Port directly to the USB Hub" ('037 Patent, cl. 1; '899 Patent, cl. 1); "connect the second USB port directly to the first USB port through the USB hub" ('420 Patent, cls. 1, 7); "connect the first downstream USB port directly to the USB hub" ('962 Patent, cls. 1, 14); and "the routing logic connected directly to the USB hub" ('643 Patent, cls. 1, 5, 10)

- As used in the context of the claim language, these claim elements are indefinite for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention as claimed. For example, the

38

meaning of "directly" is unclear, particularly because some claims refer to bypassing components, instead of communicating "directly."

- "only respond to communication from the embedded USB Host" ('037 Patent, cl. 1); "only responding to communication initiated by the USB Host when the consumer device connected to the second USB port is in a USB device mode" ('420 Patent, cls. 1, 7); "only respond to communication initiated by the USB host when the consumer device is determined to be in the USB device mode" ('420 Patent, cl. 13); "only responding to communication initiated by the USB host when the first consumer device connected to said second USB port is operating in a USB device mode" ('420 Patent, cls. 15, 18); "only respond to communication from the upstream USB port" ('962 Patent, cls. 1, 14); "only respond to communication from the USB host" ('899 Patent, cl. 1)

  o As used in the context of the claim language, these claim elements are indefinite for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention as claimed. For example, the meaning of "only respond[]" is unclear, particularly in the context of protocols like USB with data and messages flowing in both directions.

- "a first USB port connected to a USB host and a second USB port connected to a consumer device, . . . connecting the consumer device via the second USB port to the USB hub via the first USB port through the USB routing switch and the USB bridge" ('420 Patent, cl. 13)

  o As used in the context of the claim language, these claim elements are indefinite for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention as claimed. For example, it is unclear how, if at all, the consumer device can be connected "via the second USB port to the USB hub via the first USB port through the USB routing switch and the USB bridge" when the first USB Port is already "connected

to a USB host."

- "Universal Serial Bus (USB) connectivity module" ('420 Patent, cl. 15)

    o As used in the context of the claim language, these claim elements are indefinite for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention as claimed. For example, the meaning of "connectivity module" is unclear, particularly because this term is never used in the specification outside of the claims.

- "some combination of embedded devices and consumer devices that are USB Devices along with at least one that is the second USB Host" ('037 Patent, cl. 16)

    o As used in the context of the claim language, these claim elements are indefinite for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention as claimed. For example, the meaning of "some combination" is unclear, particularly because it is unclear what combinations of these would meet the claim including whether both embedded devices and consumer devices are required.

- "USB signal" or "USB signals" ('072 Patent, cl. 1, '643 Patent, cls. 1, 5, 10)

    o As used in the context of the claim language, these claim elements are indefinite for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention as claimed. For example, the meaning of "signal" is unclear, particularly based upon Aptiv's infringement allegations, which appear to equate "signals" with "data" or "messages."

- "a USB Hub having a plurality of USB Ports and interconnected to the embedded USB Host system . . . a USB routing switch interconnected to the USB Bridge, the USB Hub, and the plurality of USB Ports, wherein the USB routing switch is configured to connect a first USB Port of the plurality of USB Ports to the USB Hub through the USB Bridge when a consumer device connected to the USB Port

is the second USB Host and is configured to initiate bidirectional communication with the embedded USB Host, and wherein the USB routing switch is configured to connect the first USB Port directly to the USB Hub when the consumer device connected to the first USB Port is configured to only respond to communication from the embedded USB Host, thereby rendering the consumer device compatible with the embedded USB Host system" ('037 Patent, cl. 1); and "providing a USB hub having a plurality of USB ports interconnected to the USB host . . . automatically configuring the USB routing switch to connect a first USB Port of the plurality of USB ports to the USB hub through the USB bridge when a consumer device connected to the USB host mode port is the second USB host; and automatically configuring the USB routing switch to initiate bidirectional communication with the USB host, wherein the USB routing switch is configured to connect the first USB port directly to the USB hub when the consumer device connected to the first USB port is configured to only respond to communication from the USB host, thereby rendering the consumer device compatible with the USB host" ('899 Patent, cl. 1)

- o As used in the context of the claim language, these claim elements are indefinite for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention as claimed. For example, these terms refer to the USB hub as "having" a plurality of ports, but also recite that the ports may be connected to the hub through a bridge. The patentee stated during prosecution that it is not logical for a hub to both have and be connected to a particular part. *See* '037 Patent 4/11/2016 Reply to Final Office Action, 5 (distinguishing Bohm (US Pub 2006/0227759)) ("it is not logical that the hub controller 203 and downstream switching logic 201 can be components of the USB switching hub 119 that are contained within USB switching hub 119 and at the very same time be interconnected to the

41

same USB switching hub 119").

- "USB multiplexing switches" ('072 Patent, cl. 1)
  - o As used in the context of the claim language, these claim elements are indefinite for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention as claimed. For example, the meaning of "multiplexing switches" is unclear, particularly because this term is never used in the specification outside of the claims.
- "a central vehicle microcontroller connected to said first USB port" ('420 Patent, cl. 18)
  - o As used in the context of the claim language, these claim elements are indefinite for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention as claimed. For example, the meaning of "central vehicle microcontroller" is unclear, particularly because this term is never used in the specification outside of the claims. Furthermore, the use of a nonce term like "microcontroller" renders this term susceptible to a means-plus-function interpretation, with no corresponding structure in the specification.
- "signal detection circuit" ('643 Patent, cls. 1, 5)
  - o As used in the context of the claim language, these claim elements are indefinite for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention as claimed. For example, the meaning of "signal detection circuit" is unclear, particularly because this term is never used in the specification outside of the claims. Furthermore, the use of a nonce term like "circuit" renders this term susceptible to a means-plus-function interpretation, with no corresponding structure in the specification.
- "routing logic circuit" ('643 Patent, cls. 1, 5, 10)

- o As used in the context of the claim language, these claim elements are indefinite for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention as claimed. For example, the meaning of "routing logic circuit" is unclear, particularly because this term is never used in the specification outside of the claims. Furthermore, the use of a nonce term like "circuit" renders this term susceptible to a means-plus-function interpretation, with no corresponding structure in the specification.

- "wherein the integrated circuit further comprises a logic circuit configured to provide data handshaking to negotiate electrical power transfer from the USB hub module to a first consumer device connected to the first downstream USB port" ('962 Patent, cl. 18) and "dynamically switching operation of USB Ports connected to the USB Hub Module between USB Device mode and USB Host mode" ('899 Patent, cl. 4)

  - o As used in the context of the claim language, these claim elements are indefinite for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention as claimed. For example, the meaning of "the USB hub module" is unclear, particularly because this term is never used previously in the claim.

- "wherein the USB hub and USB bridge have different components and functionality" ('643 Patent, cls. 1, 5, 10)

  - o As used in the context of the claim language, these claim elements are indefinite for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention as claimed. For example, the meaning of "different components and functionality" is unclear, particularly because a USB hub and USB bridge likely have some amount of overlap in components and functionality, and it is unclear how "different" these must

be to meet the claims.

- "The method according to claim 3, wherein the USB routing switch includes the signal detection circuit." ('643 Patent, cl. 4) and "The method according to claim 14, wherein the USB routing switch determines whether the second USB signal emanates from a USB device." ('643 Patent, cl. 15)

  o As used in the context of the claim language, these claim elements are indefinite for failure to inform, with reasonable certainty, those skilled in the art about the scope of the invention as claimed. For example, it is unclear how the routing switch can include the signal detection circuit or determine whether the second USB signal emanates from a USB device.

**B.      Invalidity under 35 U.S.C. § 112(a) (Written Description/Enablement)**

Pursuant to 35 U.S.C. § 112(a), a patent specification:

> shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make, and use the same[.]

The Federal Circuit has held that this language creates two closely related, yet separate requirements for a specification: (i) a written description of the invention ("written description"); and (ii) a written description of the manner and process of making and using the invention ("enablement"). *See Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1344 (Fed. Cir. 2010) (*en banc*).

The test for sufficiency of a patent's written description requires:

> an objective inquiry into the four corners of the specification from the person of ordinary skill in the art. Based on that inquiry, the specification must describe an invention understandable to that skilled artisan to show that the inventor actually invented the invention claimed.

*Ariad*, 598 F.3d at 1351. A patent is invalid for inadequate written description unless "the

44

disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.*

The enablement requirement mandates that the disclosure in the specification describe "the manner and process of making and using [the invention], in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the [invention]." 35 U.S.C. § 112(a). For a patent's specification to be enabling, it "must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *ALZA Corp. v. Andrx Pharms., LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010) (quoting *Genetech Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997)).

Below is an exemplary list of claim elements[2] for which there is inadequate written description and/or lack of enablement under 35 U.S.C. § 112(a). For example, certain claim limitations fail to describe an invention understandable to a skilled artisan at the time of the invention and/or fail to show that the inventor actually possessed the invention claimed. *See Ariad*, 598 F.3d at 1351. As a further example, certain claims are invalid because the specification fails to teach those skilled in the art at the time of the alleged invention how to make and use the full scope of the claimed invention without undue experimentation. *See ALZA*, 603 F.3d at 940. As an additional example, certain claim limitations encompass any and all structures or acts for performing a recited function, including those beyond what their applicant(s) invented, such that the specification fails to provide a scope of enablement commensurate with the scope of the claim as asserted by Aptiv. *See Halliburton Oil Well Cementing Co. v. Walker*, 329 U.S. 1, 12–13 (1946). As yet another example, certain claims are invalid for failing to enable the full scope of the invention as defined by the claims. *See Amgen Inc. v. Sanofi*, 143 S. Ct. 1243, 1254 (2023)

---

[2] Any discrepancy between the language included in the bullets of this paragraph and the language of the corresponding claim element is inadvertent and it is Microchip's contention that the claim element is not adequately described and/or enabled under 35 U.S.C. § 112(a) and/or is indefinite under 35 U.S.C § 112(b).

("If a patent claims an entire class of processes, machines, manufactures, or compositions of matter, the patent's specification must enable a person skilled in the art to make and use the entire class.").

Any deficiencies that render claims invalid for written description and/or enablement under 35 U.S.C. § 112 also infect and thereby invalidate any and all claims depending therefrom—including any dependent claims asserted by Aptiv.

In addition to the claims as a whole, at least the following claim elements, or portions thereof, of the Asserted Patents are not supported by the written description and/or are not enabled under 35 U.S.C. § 112(a):

- "embedded Universal Serial Bus (USB) Host system" and "embedded USB host" ('037 Patent, cl. 1; '072 Patent, cl. 1)

    o To the extent that the Court concludes that these claim elements should not be construed consistent with the specification, which requires that the host be embedded within the infotainment system in a vehicle, these elements fail to meet the written description requirement and/or are not enabled. For example, the patents only describe an "embedded USB host" in the context of an infotainment system in a vehicle. The patents would not convey to one of skill in the art that, as of the filing date, the inventor had possession of the broader interpretations. Nor would the patents teach one of ordinary skill in the art how to practice these claim elements without undue experimentation. Additionally, the claims containing these limitations are invalid for failing to enable the full scope of the invention as defined by the claims.

- "USB Hub" and "USB hub" ('037 Patent, cl. 1; '420 Patent, cls. 1, 7, 13, 15, 18; '962 Patent, cls. 1, 14; '899 Patent, cl. 1; '072 Patent, cl. 1; '643 Patent, cls. 1, 5, 10) and "USB Hub Module" and "USB hub module" ('037 Patent, cls. 4, 6, 7; '420 Patent, cls. 1, 2, 3, 4, 5, 6, 13, 15, 16, 17; '962 Patent, cl. 1-13, 18)

- o Under Aptiv's apparent infringement allegations, these elements fail to meet the written description requirement and/or are not enabled. The patents do not convey to a person of skill in the art how to practice these claim elements without undue experimentation. Additionally, the claims containing these limitations are invalid for failing to enable the full scope of the invention as defined by the claims.

- "USB signal" or "USB signals" ('072 Patent, cl. 1, '643 Patent, cls. 1, 5, 10)
    - o Aptiv appears to equate a "signal" with "data" or "messages." (*E.g.*, Aptiv's Infringement Contentions, September 8, 2023, Ex. E at 12.) To the extent that the Court concludes that these claim elements should not be construed pursuant to their ordinary meaning, which is not the same as data or messages, these elements fail to meet the written description requirement and/or are not enabled. The patents would not convey to one of skill in the art that, as of the filing date, the inventor had possession of any broader interpretations. Nor would the patents teach one of ordinary skill in the art how to practice these claim elements without undue experimentation. Additionally, the claims containing these limitations are invalid for failing to enable the full scope of the invention as defined by the claims.

- "Universal Serial Bus (USB) connectivity module" ('420 Patent, cl. 15)
    - o This element fails to meet the written description requirement and/or is not enabled. For example, the term "connectivity module" does not appear in the specification outside the claims. The patents would not convey to one of skill in the art that, as of the filing date, the inventor had possession of the claimed subject matter. Nor would the patents teach one of ordinary skill in the art how to practice these claim elements without undue experimentation. Additionally, the claims containing these limitations are invalid for failing to enable the full scope of the invention as defined by the

47

claims.

- "a USB Hub having a plurality of USB Ports and interconnected to the embedded USB Host system . . . a USB routing switch interconnected to the USB Bridge, the USB Hub, and the plurality of USB Ports, wherein the USB routing switch is configured to connect a first USB Port of the plurality of USB Ports to the USB Hub through the USB Bridge when a consumer device connected to the USB Port is the second USB Host and is configured to initiate bidirectional communication with the embedded USB Host, and wherein the USB routing switch is configured to connect the first USB Port directly to the USB Hub when the consumer device connected to the first USB Port is configured to only respond to communication from the embedded USB Host, thereby rendering the consumer device compatible with the embedded USB Host system" ('037 Patent, cl. 1) and "providing a USB hub having a plurality of USB ports interconnected to the USB host . . . automatically configuring the USB routing switch to connect a first USB Port of the plurality of USB ports to the USB hub through the USB bridge when a consumer device connected to the USB host mode port is the second USB host; and automatically configuring the USB routing switch to initiate bidirectional communication with the USB host, wherein the USB routing switch is configured to connect the first USB port directly to the USB hub when the consumer device connected to the first USB port is configured to only respond to communication from the USB host, thereby rendering the consumer device compatible with the USB host" ('899 Patent, cl. 1)

  o To the extent that the Court concludes that these claim elements are not indefinite, these elements fail to meet the written description requirement and/or are not enabled. The patents would not convey to one of skill in the art that, as of the filing date, the inventor had possession of the claimed subject matter. Nor would the patents teach one of ordinary skill in the art

48

how to practice these claim elements without undue experimentation. Additionally, the claims containing these limitations are invalid for failing to enable the full scope of the invention as defined by the claims.

- "a first USB port connected to a USB host and a second USB port connected to a consumer device, . . . connecting the consumer device via the second USB port to the USB hub via the first USB port through the USB routing switch and the USB bridge" ('420 Patent, cl. 13)
  - o This element fails to meet the written description requirement and/or is not enabled.  For example, the specification does not disclose a configuration where the consumer device can be connected "via the second USB port to the USB hub via the first USB port through the USB routing switch and the USB bridge" when the first USB Port is already "connected to a USB host." The patents would not convey to one of skill in the art that, as of the filing date, the inventor had possession of the claimed subject matter.  Nor would the patents teach one of ordinary skill in the art how to practice these claim elements without undue experimentation.  Additionally, the claims containing these limitations are invalid for failing to enable the full scope of the invention as defined by the claims.

- "wherein the USB routing switch comprises digital routing logic" ('037 Patent, cl. 11; '962 Patent, cl. 10)
  - o These elements fail to meet the written description requirement and/or are not enabled.  For example, the patents do not describe "digital routing logic" that can be used in the context of the claimed invention.  The patents would not convey to one of skill in the art that, as of the filing date, the inventor had possession of the claimed subject matter.  Nor would the patents teach one of ordinary skill in the art how to practice these claim elements without undue experimentation.  Additionally, the claims containing these

49

limitations are invalid for failing to enable the full scope of the invention as defined by the claims.

- "wherein the USB Bridge comprises a bridge controller as well as endpoint buffers" ('037 Patent, cl. 12; '962 Patent, cl. 8); and "bridge controllers" ('643 Patent, cls. 1, 5, 10)

    o These elements fail to meet the written description requirement and/or are not enabled. For example, to the extent the claimed bridge differs from known prior art bridges, the patents do not describe a "bridge controller" with "endpoint buffers" that can be used in the context of the claimed invention. The patents would not convey to one of skill in the art that, as of the filing date, the inventor had possession of the claimed subject matter. Nor would the patents teach one of ordinary skill in the art how to practice these claim elements without undue experimentation. Additionally, the claims containing these limitations are invalid for failing to enable the full scope of the invention as defined by the claims.

- "wherein the endpoint buffers are configured to support a USB data connection pipe between an infotainment system and the consumer device" ('037 Patent, cl. 13; '962 Patent, cl. 9)

    o These elements fail to meet the written description requirement and/or are not enabled. For example, the patents do not describe a "USB data connection pipe" that can be used in the context of the claimed invention. The patents would not convey to one of skill in the art that, as of the filing date, the inventor had possession of the claimed subject matter. Nor would the patents teach one of ordinary skill in the art how to practice these claim elements without undue experimentation. Additionally, the claims containing these limitations are invalid for failing to enable the full scope of the invention as defined by the claims.

50

- "input port" ('072 Patent, cl. 1)

  o These elements fail to meet the written description requirement and/or are not enabled.  For example, the patents do not describe any "input ports" that can be used in the context of the claimed invention.  The patents would not convey to one of skill in the art that, as of the filing date, the inventor had possession of the claimed subject matter.  Nor would the patents teach one of ordinary skill in the art how to practice these claim elements without undue experimentation.  Additionally, the claims containing these limitations are invalid for failing to enable the full scope of the invention as defined by the claims.

- "wherein the logic circuit includes a communication control stack" ('962 Patent, cls. 12, 19)

  o These elements fail to meet the written description requirement and/or are not enabled.  For example, the patents do not describe any "communication control stack" that can be used in the context of the claimed invention.  The patents would not convey to one of skill in the art that, as of the filing date, the inventor had possession of the claimed subject matter.  Nor would the patents teach one of ordinary skill in the art how to practice these claim elements without undue experimentation.  Additionally, the claims containing these limitations are invalid for failing to enable the full scope of the invention as defined by the claims.

- "signal detection circuit" ('643 Patent, cls. 1, 5)

  o These elements fail to meet the written description requirement and/or are not enabled.  For example, the patents do not use the term "signal detection circuit" in the specification outside of the claims.  The patents would not convey to one of skill in the art that, as of the filing date, the inventor had possession of the claimed subject matter.  Nor would the patents teach one

51

of ordinary skill in the art how to practice these claim elements without undue experimentation. Additionally, the claims containing these limitations are invalid for failing to enable the full scope of the invention as defined by the claims.

- "routing logic circuit" ('643 Patent, cls. 1, 5, 10)

  o These elements fail to meet the written description requirement and/or are not enabled. For example, the patents do not use the term "routing logic circuit" in the specification outside of the claims. The patents would not convey to one of skill in the art that, as of the filing date, the inventor had possession of the claimed subject matter. Nor would the patents teach one of ordinary skill in the art how to practice these claim elements without undue experimentation. Additionally, the claims containing these limitations are invalid for failing to enable the full scope of the invention as defined by the claims.

- "The method according to claim 3, wherein the USB routing switch includes the signal detection circuit." ('643 Patent, cl. 4) and "The method according to claim 14, wherein the USB routing switch determines whether the second USB signal emanates from a USB device." ('643 Patent, cl. 15)

  o These elements fail to meet the written description requirement and/or are not enabled. For example, the patents do not describe a configuration in which the routing switch includes the signal detection circuit or determines whether the second USB signal emanates from a USB device.

## IV.    ACCOMPANYING DOCUMENT PRODUCTION

Pursuant to the Scheduling Order, Microchip is producing and/or providing for inspection, alongside its Initial Invalidity Contentions, the known invalidating references referred to herein and in the accompanying claim charts at production numbers MCHP_00456051 - MCHP_00458160, and MCHP_00458166 - MCHP_00461281 . To the extent that any such item

52

is not in English, an English translation of the portion(s) relied upon has been or will be produced.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

By: */s/ Jack B. Blumenfeld*
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

OF COUNSEL:

John M. Neukom (*pro hac vice*)
Barbara N. Barath (*pro hac vice*)
Yuqing Cui (*pro hac vice*)
Alexander H. Lee (*pro hac vice*)
DEBEVOISE & PLIMPTON LLP
650 California Street, Floor 31
San Francisco, CA 94108
Telephone: (415) 738-5700
jneukom@debevoise.com
bnbarath@debevoise.com
ycui@debevoise.com
ahlee@debevoise.com

Andrew Gish (*pro hac vice*)
GISH PLLC
41 Madison Avenue, Floor 31
New York, NY 10010
Telephone: (212) 518-2000
andrew@gishpllc.com

Ryan K. Iwahashi
GISH PLLC
50 California Street, Suite 1500
San Francisco, CA 94111
(415) 630-8960
ryan@gishpllc.com

*Attorneys for Defendant*
*Microchip Technology Incorporated*

53

## CERTIFICATE OF SERVICE

I, Audris Kuang, hereby certify that on October 10, 2023, I served the foregoing document

via electronic mail to the following individuals listed below:

Daralyn J. Durie
Eric Wiener
Timothy Chen Saulsbury
Joyce C. Li
Tannyr Pasvantis
Andrew L. Perito
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, CA 94105-2482
(415) 268-7000

W. Henry Huttinger
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
(213) 892-5200

Andrew Jones
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C. 20037
(202) 887-1500

Aptiv-MC@mofo.com

Philip A. Rovner
Jonathan A. Choa
POTTER ANDERSON & CORROON LLP
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000

provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Aptiv Technologies Limited*

   */s/ Audris Kuang*
   Audris Kuang

54