IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **APTIV TECHNOLOGIES AG**, *Plaintiff*, v. **MICROCHIP TECHNOLOGY, INC.**, *Defendant*. | Case No. 1:23-cv-00307-JDW |

## MEMORANDUM

On a basketball court, the players need a shot clock to prevent them from stalling indefinitely. In a court of law, scheduling orders have the same effect. Litigation must move toward resolution, even when patent disputes proceed on parallel tracks in the Patent and Trademark Office and district court. I stayed this case to allow for *inter partes review*, and that review eliminated four of the six asserted patents. Now, Microchip Technology wants another timeout to permit *ex parte* reexamination of the remaining patents. But this case has lingered too long, and it's not clear that an EPR will help drive it forward. In fact, it's rarely the case that an EPR will simplify cases enough to justify a stay. Nor has Microchip demonstrated good cause for me to amend the scheduling order to assert extra invalidity references. I will therefore deny Microchip's motions for a stay and to modify the scheduling order in the hopes that all involved can move this case forward.

## I. BACKGROUND

Aptiv Technologies AG filed this action in March 2023 asserting that Microchip Technology Inc. infringed six related patents directed to USB routing and power-control technology. Shortly after the case began, the parties submitted competing proposals regarding how to manage the scope of the litigation. In October 2023, after reviewing those proposals and conducting a status conference, I entered a Scheduling Order designed to narrow the case following claim construction. That Order required Aptiv to limit itself to no more than five asserted claims per patent and required Microchip to limit its invalidity contentions to no more than six prior art references per asserted patent. The purpose of that framework was to ensure that, once I construed the claims, both sides would present streamlined cases focused on a manageable number of claims and prior art references.

While this litigation was proceeding, Microchip filed petitions with the Patent Trial and Appeal Board challenging the patentability of all asserted claims across all six patents. In August 2024, the parties stipulated to a stay of this action pending resolution of those IPRs and post-grant proceedings, and I entered the stay. Over the next year, the PTAB issued final written decisions invalidating all asserted claims in four of the six patents. As to the two remaining patents—U.S. Patent Nos. 9,460,037 and 10,545,899—the PTAB declined to institute IPR on procedural grounds. The parties sought Director Review of certain PTAB determinations, and that process concluded in September 2025.

Shortly thereafter, Microchip filed petitions for *ex parte* reexamination of the '037 and '899 patents. On November 10, 2025, after the PTAB proceedings had concluded, I lifted the stay as to the two surviving patents and issued an updated Scheduling Order that requires Aptiv to select no more than five asserted claims per remaining patent and requires Microchip to narrow its invalidity contentions to no more than six prior art references per patent. Aptiv complied with that Order on November 21, 2025, selecting five claims from each of the '037 and '899 patents. Each patent contains a single independent claim. The selected claims consist of that independent claim and four dependent claims per patent. Some of those dependent claims depend from other dependent claims, thereby incorporating additional limitations.

On December 12, 2025, the same day its narrowed prior art disclosures were due under the Court's November 2025 Order, Microchip filed a motion to modify the Scheduling Order. Microchip seeks leave to rely on seven references per patent, with six common to both patents and one additional reference unique to each. Microchip contends that Aptiv's selection of dependent claims, including some that rely on unasserted claims, adds more limitations than anticipated and requires additional prior art.

On January 15, 2026, the PTO instituted EPR proceedings for the two remaining patents. That same day, Microchip filed a second motion seeking to stay the case pending completion of the EPRs of the two remaining patents. The case is now approaching expert

discovery and dispositive motion practice. Claim construction is complete, and fact discovery is largely concluded. Both motions are fully briefed and ready for disposition.

## II.   LEGAL STANDARD

### A.   Motion To Stay

A court has discretionary authority to grant a motion to stay because "[t]he ability to stay cases is an exercise of a court's inherent power to manage its own docket." *Murata Machinery SA v. Daifuku Co., Ltd.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016). In exercising this discretion, the court must weigh the competing interests of the parties and attempt to maintain an even balance. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). Courts typically rely on three factors in determining whether a stay is appropriate: (1) whether a stay will simplify the issues for trial, (2) whether discovery is complete, and a trial date has been set, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See PACT XPP Schweiz AG v. Intel Corp.*, No. 1:19-cv01006, 2020 WL 13119705 at *1 (D. Del. Nov. 05, 2020). Sometimes courts also consider whether the moving party would face hardship or inequity in going forward with the litigation. *See Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*, 2010 WL 2573925, at *3 (D. Del. June 25, 2010).

### B.   Motion To Modify Schedule

To modify a scheduling order, a party must demonstrate "good cause." Fed. R. Civ. P. 16(b)(4). To establish good cause in the context of a scheduling order, a party must

demonstrate that the requirements set forth in the scheduling order cannot reasonably be met despite the diligence of the party seeking the modification. *See Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). Whether a movant meets Rule 16(b)(4)'s good cause requirement \depends on the '"diligence of the movant, and not on prejudice to the non-moving party.'" *Cloud Farm Assocs., L.P. v. Volkswagen Grp. of Am., Inc.*, No. CA 10-502-LPS, 2012 WL 3069390, at *2 (D. Del. July 27, 2012) (quoting *Venetec Int'l, Inc. v. Nexus Med., LLC,* 541 F.Supp.2d 612, 618 (D.Del.2008)).

### III.   ANALYSIS

#### A.   Motion To Stay

Parties routinely ask me to stay cases pending an EPR. I write here to explain why, except in extraordinary cases, I do not think it is appropriate to do so. EPRs have an uncertain path and do not necessarily simplify a case. It's possible, of course, that an EPR could result in claims that a party asserts being cancelled. Or it could result in their confirmation or amendment. Although EPRs are supposed proceed on an expedited basis, the duration of such proceedings is inherently uncertain, and appeals can extend the timeline further. I cannot confidently predict when the reexamination process will conclude or what its outcome will be.

EPRs stand in contrast to IPRs. IPRs have rigid statutory timetables. They have binary outcomes. And they estop parties from raising in litigation arguments that they made before the PTAB. EPRs offer none of that certainty. A stay pending an EPR therefore

kicks the can down the road without any clarity about how long the road will be or even what route the road will follow after the detour to the PTO. Thus, while EPRs offer the theoretical possibility of narrowing the case, *ex ante*, it is almost impossible to say that an EPR will simplify issues for trial, rather than just changing or deferring those issues.

Microchip's motion gives me no reason to deviate from these basic principles. *First*, the case is not in its early stages. I have construed the claims, Aptiv has narrowed its claims, and the Parties have completed substantial fact discovery. In addition, the case has already sat idle for one set of proceedings before the PTO. All of this suggests that the stage-of-litigation-factor weighs against a stay. While it's true that a stay might avoid expert discovery and dispositive motions, that's just a maybe, not definite.

*Second*, Microchip has not shown that this EPR is likely to simplify the issues, for the reasons that I've described. Microchip contends that simplification is not merely possible but likely because the PTAB invalidated four related patents based on similar prior art. That history informs the analysis, but it does not control it. Related patents might share subject matter, but differences in claim language can materially affect validity determinations. The examiner will have to evaluate the asserted claims on their own terms and on the record before the him. I will not presume that the PTO will reach the same result; that's just speculation.

*Third*, and finally, a stay would unfairly disadvantage Aptiv. In analyzing this last factor, courts examine four factors: "(1) the timing of the request for review; (2) the timing

of the request for a stay; (3) the status of the review proceedings; and (4) the relationship of the parties." *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. CV 18-452-WCB, 2019 WL 3943058, at *5 (D. Del. Aug. 21, 2019). The PTAB declined to institute IPRs of the '037 and '899 patents in 2024. But Microchip waited until October 2025, after the conclusion of Director Review in the related patent proceedings, to seek an EPR. That timing matters. Microchip could have sought EPR proceedings while the IPR proceedings were pending and while this case was already stayed. The EPR proceedings are in their infancy, so I have no idea how long I would be staying this case. And the relationship between the parties as alleged reinforces the potential for prejudice to Aptiv. Although the parties dispute the degree of direct competition, Aptiv contends that it is suffering ongoing harm from continued sales of the accused products and seeks injunctive relief in addition to damages. I must give that assertion some weight. Under these circumstances, I cannot conclude that further delay would be inconsequential.

### B.     Motion To Modify

Microchip has not demonstrated good cause to modify the schedule. The six-reference limitation at issue here is not new. It resulted from the parties' competing proposals in October 2023, after which I adopted a narrowing framework that required Aptiv to select no more than five claims per patent and Microchip to select no more than

7

six prior art references per patent. That Order was clear, and it did not hinge on the number of patents asserted or the types of claims asserted.

More than two years later, Microchip seeks to revisit that structure. But it does not contend that the asserted patents have changed in substance or structure. It does not point to any unforeseen development that altered the landscape of the case. Instead, it argues that Aptiv's election of five claims per patent—many of them dependent claims—creates a need for additional references. That circumstance was foreseeable from the outset. Each patent contains only one independent claim. It was predictable that Aptiv might select several dependent claims. It was equally predictable that some of those dependent claims would incorporate limitations from other dependent claims.

Nor are Microchip's proposed additional prior art references newly discovered. They were included in the invalidity contentions that Microchip served on Aptiv in 2023. The diligence inquiry under Rule 16 is measured from when the relevant information became available. In this case, Microchip has known the identity of the prior art references for a long time—maybe since the beginning of the case. Rule 16 does not permit modification of a scheduling order just because a party reassesses its strategy and wishes it had preserved greater flexibility.

Orders that limit invalidity contentions and infringement claims serve an important case management purpose. By imposing these limits, I require parties to identify the theories they intend to pursue and to prioritize those that matter most. This approach

keeps discovery targeted, confines expert reports to manageable issues, and streamlines motion practice. Without meaningful limits, cases expand rather than narrow. Aptiv has complied with my Order. If Microchip believed that addressing dependent claim limitations required more than six references per patent, the time to raise that concern was when I entered the Order in October 2023, not after Aptiv complied with it in 2025.

## IV. CONCLUSION

I have already stayed this case once, and the PTO and Aptiv have both taken steps to narrow the dispute. Now it's time to resolve the case in this Court, using the parameters that I have already set. I will deny Microchip's Motions. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

March 6, 2026